LIPSCHITZ v. KOEPPEL et ál.

(Supreme Court, Appellate Division, Second Department. April 7, 1911.)

MASTER AND SERVANT (§ 277*)—INJURIES TO SERVANT—EXISTENCE OF RELATIONSHIP—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a servant, evidence *held* insufficient to establish the relationship of master and servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 953; Dec. Dig. § 277.*⁻

Appeal from Trial Term, Kings County.

Action by Pearl Lipschitz, as administratrix, etc., of Morris Lipschitz, deceased, against John Koeppel and another. From a judgment for plaintiff, and from an order denying defendants' motion for a new trial, defendants appeal. Reversed, and new trial granted.

See, also, 127 N. Y. Supp. 1129.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

F. Sidney Williams, for appellants.

Thomas J. O'Neill (Leonard F. Fish, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JENKS, P. J. The plaintiff complained that her intestate was a servant of the defendants, who as copartners were "the owners and builders of the premises in the course of construction," and "as such supervised and controlled the construction," and "did the carpenter work" incidental to that construction; that the servant was injured in his employment by a fall, due to the neglect of the defendants as masters to furnish a safe place, ways, works, and machinery, reasonably to safeguard, to inspect, and to keep safe the same, to employ a competent foreman and coworkmen, and due to the neglect of the defendants' superintendents of their duties. The defendants admitted the ownership of the premises, denied the other allegations of the complaint, and alleged contributory negligence.

The testimony to establish relationship of master and servant is meager and ambiguous. A servant of the contractor for plumbing work testifies that the intestate was at work in the building, and another witness, who was seeking work at the time of the accident, testifies that he saw the intestate in the building cutting beams. In addition to this evidence, the said workman testifies that he saw the defendants "going around, telling a man to do this, and telling a man to do that; * * * all kinds of workingmen on the building"; but this testimony is weakened by his further statement that he had not heard the defendants "say anything to others, only in reference to what conversations one of them had with me." Although the witness then went on to say, "I heard them giving orders to the men," as he had theretofore said that he did not hear the defendants say anything, and as he thereafter added, "What the orders were I don't know," such testimony is subject to the criticism that it is inferential, rather than direct. There is but the further testimony of the said witness, who was seeking work, that when the intestate was on his knees at work one of the defendants came up behind him and yelled:

"Why are you bothering around here so much? Hurry up! hurry up! * * * Schnell! schnell!"

For the defense one of the defendants testifies that the work upon the building was all done by contractors (whose names were given on cross-examination); that the carpenter and frame work were let out on contract to Glasser for $1,700, which was paid to him; that Glasser did part of the work, but afterwards subcontracted with Kaplan and Krugman, who actually did almost all of the work; that neither he nor his brother ever did any carpenter work on the building; that he did not know the intestate, and that he never gave orders of any kind to any of the workmen. He offered to produce the checks paid to Glasser; but the court said to him that, unless the point was seriously contested, he need not do so. Glasser testified that he contracted to do all of the carpenter and framing work for $1,700, which was paid to him, but that after doing a part thereof he gave it over to Krugman and Kaplan. A contract in writing between him and Krugman and Kaplan was read in evidence. The stipulation on the record is that it was lost during the trial, but that it provided that Krugman and Kaplan should do all the carpenter work, that Glasser should pay them $1,490 in specified installments, that there had been some

changes made in the contract, in the amounts of some of the installments, and that such sum of $1,490 had been changed from some smaller amount. Glasser testified that he had paid the $1,490 to Krugman and Kaplan, and that the intestate was employed by Krugman and Kaplan. The other defendant corroborated his brother and Glasser. He denied that he ever gave any orders, testified that the intestate was employed by Krugman and Kaplan, and denied that he even spoke to the intestate on the occasion testified to by one witness for the plaintiff.

The defendants' case is criticised, in that it appeared that Glasser had presented a written contract prepared by him to the defendants, which they did not execute. Their explanation is that they had at the time other bids, that they postponed execution until they had satisfied themselves of Glasser's responsibility and reputation, and that then they told him to proceed, without signing the contract.

The presence and occupation of the intestate are entirely consistent with his employment by a contractor. The testimony as to the "orders" is not sufficient to establish that the giver of them was the master of the intestate, when weighed with the evidence adduced by the defendants. I may add that the evidence of the plaintiff's first witness as to "orders" is weakened by the fact that he testifies that a defendant gave an "order" to him, and yet it appears beyond question that he was a servant of a contractor. If the case had presented the issue of the liability of the defendants for the alleged "order" of one of them to the intestate, an interesting question would have arisen, within the discussion in the judgment of Martin v. Connah's Quay Alkali Co., 33 Weekly Rep. (Q. B. Div.) 216.

I think that upon plaintiff's theory of action, that the defendants were masters of the plaintiff, the plaintiff failed to sustain the burden of establishing such relationship, and therefore I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event. All concur.